**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION**

**WANDA FOWLER**                                                                          **PLAINTIFF**

**v.**                                                    **1:07CV00011-WRW**

**SHELTER MUTUAL INSURANCE,** *et al.*                                      **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendant Shelter Insurance's Motion for Summary Judgment (Doc. No. 37).

Plaintiff has responded (Doc. No. 41). For the reasons set out below, Defendant's Motion is

DENIED.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[1]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[2]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

extreme remedy that should only be granted when the movant has established a right to the

judgment beyond controversy.[3]  Nevertheless, summary judgment promotes judicial economy by

---

[1]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[3]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

1

preventing trial when no genuine issue of fact remains.[4]  I must view the facts in the light most favorable to the party opposing the motion.[5]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[6]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[7]

## II. BACKGROUND

On November 14, 2003, Plaintiff was driving west on Dry Bone Road in Sharp County, Arkansas, in a school bus owned by Highland Public Schools.[8]  A 2003 Dodge pick-up driven by Shannon Henry struck the bus.[9]  Plaintiff alleges that Ms. Henry negligently operated her pick-

---

[4]*Id.* at 728.

[5]*Id.* at 727-28.

[6]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[7]*Anderson*, 477 U.S. at 248.

[8]Doc. No. 2.

[9]*Id.*

up.[10] Plaintiff asserts that, as a result of the collision, she was injured, incurred expenses in connection with her injury, and will continue to suffer from her injury and incur further medical expenses.[11] Plaintiff claims that she suffered damages far in excess of $100,000.[12]

At the time of the accident, Plaintiff was covered for underinsured motorist benefits under a policy issued in favor of Highland School District by Defendant Shelter.[13] Defendant Shelter's policy read "[t]he Company's obligation shall apply only to such damages as are in excess of the total limits of all bodily injury liability policies and bonds applicable to the person or persons legally responsible for such damages and available to cover the insured's damages."[14] Defendant Shelter has not paid Plaintiff underinsured motorist benefits.[15]

---

[10]*Id*. Plaintiff alleges that Ms. Henry was negligent in that she: failed to keep her vehicle on her half of the road; failed to properly watch for other vehicles on the road; drove her vehicle too fast under the circumstances; and failed to keep her vehicle under control. *Id*.

[11]*Id*. Plaintiff asserts that she "suffered severe, painful, and permanent personal injury." Plaintiff also alleges she suffered mental anguish, has experienced a "diminution in the quality of her life . . ." and will continue to suffer from her injuries.

[12]*Id*.

[13]Doc. No. 2. Plaintiff was covered under the policy because she was operating a school bus owned by Highland School District. Plaintiff was also covered for underinsured motorist benefits under a policy issued to her by Defendant Southern Farm Bureau. *Id*.

[14]Doc. No. 37, Ex. B. Ark. Code Ann. § 23-89-209(A)(3) also sets out that underinsured motorist benefits will be paid only when the operator's liability insurance does not fully cover the injured's expenses:

The coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injuries to or death of an insured which the insured is legally entitled to recover from the owner or operator of another motor vehicle whenever the liability insurance limits of the other owner or operator are less than the amount of the damages incurred by the insured.

[15]Doc. No. 2.

On February 16, 2007, Plaintiff filed a Complaint against Defendant Shelter, among others, seeking to recover underinsured motorist benefits under a breach of contract theory.[16] Risk Management Resources, the Third Party Administrator for the Arkansas School Boards Association Workers' Compensation Trust, intervened in the case, claiming a lien against a possible judgment or settlement in Plaintiff's favor[17]

At some point, Ms. Henry's -- the driver of the truck that struck Plaintiff -- liability insurance tendered its policy limits of $100,000; Plaintiff accepted those proceeds with the approval of Defendant Shelter.[18] After Plaintiff filed this case, she and Risk Management Resources entered into an agreement set out in a Joint Petition approved by the Honorable David Greenbaum, chief administrative law judge of the Arkansas Workers' Compensation Commission.[19] Under the agreement, Plaintiff was required to pay one-third of Risk Management's claimed subrogation interest on the proceeds of Plaintiff's settlement with Ms. Henry; Risk Management Resources relinquished all other subrogation claims against any other party.[20]

---

[16]*Id.* Plaintiff originally filed her complaint in the Circuit Court of Sharp County, Arkansas, Civil Division. Defendant Shelter removed the case to the United States District Court, Eastern District of Arkansas, on March 19, 2007. Doc. No. 1.

[17]Doc. No. 4. Arkansas School Boards Association Worker' Compensation Trust was also named as a Defendant in the case. Doc. No. 1. Risk Management Resources filed its motion to intervene on March 12, 2007.

[18]Doc. No. 42.

[19]*Id.*

[20]Doc. Nos. 42, 37. In connection with the distribution of the settlement, the Joint Petition reads as follows:

4

Defendant Shelter asserts that because Plaintiff and Risk Management Resources settled Risk Management's subrogation claim, Plaintiff admitted that she has been made whole through her settlement with Ms. Henry.[21] Defendant Shelter further asserts that because Plaintiff has been made whole, her damages do not exceed the amount she recovered from Ms. Henry and, thus, Plaintiff cannot recover underinsured motorist benefits.[22] Defendant also maintains that Plaintiff waived her right to underinsured motorist benefits and is barred by the doctrine of inconsistent positions from recovering those benefits.[23] Plaintiff denies that she has been made whole, and argues that a settlement between a workers' compensation carrier and an employee cannot be interpreted as an admission of having been made whole.[24]

---

| | |
|---|---|
| Third Party Settlement Amount | $100,000.00 |
| Less Case Expenses | (      419.77) |
| Less Attorney's Fee | (   33,333.33) |
| Net Amount | $ 66,246.90 |
| One-third of net to claimant | (   22,082.30) |
| Amount available for subrogation | $   44,164.60 |

Two/thirds of the net amount or $$66,246.90 is available for Risk Management Resources' subrogation lien. The Respondent's lien is $48,538.95. The Respondent's agree to accept one-third of the lien amount or $16,179.65 as satisfaction of its lien against the third party.

Doc. No. 37, Ex. A.

[21]Doc. No. 38.

[22]*Id.*

[23]*Id.*

[24]Doc. No. 42.

## III. DISCUSSION

A workers' compensation carrier is entitled to notice and an opportunity to join an action by an injured employee against a third party tortfeasor.[25]  If the carrier joins the action, it is entitled to a first lien on "two-thirds of the net proceeds recovered in the action" to offset payment of workers' compensation benefits paid to or in behalf of the injured employee.[26] It is well settled that a workers' compensation carrier's statutory subrogation right arises after the injured employee has been made whole.[27] Under the made-whole doctrine, "[a]n insured should not recover more than that which fully compensates, and an insurer should not recover any payments that should rightfully go to the insured so that he or she is fully compensated."[28]

While it is clear that a carrier's right to subrogation arises after an injured employee has been made whole, the issue here is whether an injured employee who settles with a workers' compensation carrier while claims for benefits are pending has admitted she was made whole by entering into the settlement agreement. Defendant relies on two cases to support its argument that Plaintiff's settlement agreement with Risk Management Resources equals an admission of being made whole. The first case, *Logan County v. McDonald*, involved an appeal by an employer and its insurer of a decision by the Arkansas Workers' Compensation Commission finding that the injured employee was not made whole by a settlement of his action against the

---

[25]Ark. Code Ann. § 11-9-410(a)(1)(A).

[26]Ark. Code Ann. § 11-9-410(a)(1)(B).

[27]*Travelers Ins. Co. v. O'Hara*, 350 Ark. 6, 10 (2002) (citing *General Accident Insurance Co. v. Jaynes*, 343 Ark. 143, 153 (2000); *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21 (1992)).

[28]*S. Farm Bureau Cas. Ins. Co. v. Tallant*, 362 Ark. 17, 24 (2005).

third party tortfeasor.[29] The holding in that case in connection with the made-whole doctrine is

that an employee is protected from the insurer's efforts at recovering its subrogation interest until

the employee has been made whole.[30] The Arkansas Court of Appeals explained that the

controlling factor in deciding if an injured employee has been made whole is whether "the

precise measure of reimbursement is the amount by which the sum received by the insured from

the [third party], together with the insurance proceeds, exceeds the loss sustained and the

expense incurred by the insured in realizing on his claim."[31] The Court of Appeals upheld the

trial court's finding that the employee had not been made whole.[32]

In the second case cited by Defendant, the Arkansas Supreme Court took the

"opportunity to clarify [their] position on the priority given to subrogation rights of insureds

versus those of insurers where both parties have claims against a partial recovery from a third

party."[33] In that case, the insured and the insurer both claimed exclusive rights to the proceeds of

a settlement with a third party.[34] The evidence showed that the insured had incurred expenses

well beyond the $25,000 settlement.[35] The Court held that "[a]n insured's right to subrogation

takes precedent over that of an insurer, so the insured must be wholly compensated before an

---

[29]90 Ark. App. 409, 419 (2005).

[30]*Id.* at 420.

[31]*Id.*

[32]*Id.* at 421.

[33]*Franklin v. Healthsource of Arkansas*, 328 Ark. 163, 167 (1997).

[34]*Id.* at 164.

[35]*Id.* at 168.

insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds . . . her total amount of damages incurred."[36]

The purpose of Arkansas Code Annotated § 11-9-410 is to "protect the rights of both the compensation carrier and the employee . . . ."[37] Here, Defendant Shelter is neither the employee nor the carrier, but an insurance company contesting its obligation to pay under an underinsured motorists policy. The case law cited by Defendant does not support its argument that Plaintiff admitted being made whole; there is neither evidence in the record nor case law that supports a conclusion that § 11-9-410 was intended to protect a party in Defendant Shelter's position. Case law does set out that an insurer cannot enforce its subrogation rights until an injured employee is made whole, but no precedent bans an injured employee and carrier from voluntarily settling -- versus the carrier seeking to enforce its subrogation right -- before the injured employee is made whole.[38] Thus, summary judgment as a matter of law is not appropriate.[39]

Defendant's motion for summary judgment is based on the conclusion that Plaintiff has been made whole. The test in Arkansas whether the injured party has been made whole is clear: "'the precise measure of reimbursement is the amount by which the sum received by the insured from the [third party], together with the insurance proceeds, exceeds the loss sustained and the

---

[36]*Id.* at 169.

[37]*Travelers Ins.*, 350 Ark. at 9.

[38]Further, while a carrier has an unconditional right to join an action, it is not required to do so. See Ark. Code Ann. § 11-9-410.

[39]Defendant argued that summary judgment is appropriate as a matter of law, as well as because there is no genuine question of material fact. Doc. No. 38.

expense incurred by the insured in realizing on his claim."[40]  Neither party submitted evidence of expenses Plaintiff incurred. "Summary judgment is inappropriate where factual development of a crucial issue is lacking."[41] Here, the crucial issue is whether Plaintiff has been made whole; factual development of this issue is lacking. Accordingly, summary judgment is inappropriate and Defendant's Motion is DENIED.

IT IS SO ORDERED this 12th day of February, 2008.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[40]*Id.*

[41]*Verkamp v. Floyd E. Sagely Props.*, 96 Ark. App. 61, 65 (2006) (citing *Spears v. City of Fordyce*, 351 Ark. 305 (2002)).